UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WESCO INSURANCE COMPANY,

                                        Plaintiff,

                    -v-

CUMIS INSURANCE SOCIETY, INC.,

                                        Defendant.

25 Civ. 2172 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves an insurance-coverage dispute relating to a personal-injury action pending in New York state court.

Plaintiff Wesco Insurance Company ("Wesco") sues CUMIS Insurance Society, Inc. ("CUMIS"). Wesco insured a landlord, and CUMIS insured a tenant that leased commercial, ground-floor property from that landlord. The underlying personal-injury action arises from a pedestrian's alleged trip and fall on the cellar doors and sidewalk in front of the leased property. Wesco seeks a declaratory judgment that CUMIS must defend and indemnify the landlord in the underlying action, as an additional insured under the tenant's insurance policy with CUMIS. CUMIS denies both duties.

Pending now are Wesco and CUMIS's cross-motions for summary judgment on whether CUMIS must defend and/or indemnify the landlord in the underlying action. For the following reasons, the Court holds that CUMIS has a duty to defend the landlord, but that, with the factual record undeveloped, it is premature to determine whether it has a duty to indemnify. The Court thus grants in part and denies in part Wesco's motion, and denies CUMIS's cross-motion in full.

## I.     Background[1]

### A.     The Parties

Wesco is an insurance company.  *See* Dkt. 15 ("JSF") ¶ 4.  It is incorporated in Delaware with its principal place of business in New York.  Dkt. 1 ("Removal Notice") ¶ 10.  Relevant here, Wesco insured a landlord, UHAB Housing Development Fund ("UHAB").  JSF ¶ 4.  UHAB owns the property at issue in this case, located in East Harlem at 2283-85 Second Avenue, New York, New York 10035 (the "property").  *Id.* ¶¶ 1, 4.

CUMIS is also an insurance company.  *See id.* ¶ 1.  It is incorporated in Wisconsin with its principal place of business in Iowa.  Removal Notice ¶ 11.  Relevant here, CUMIS insured UHAB's tenant that leased part of the property: the Lower East Side People's Federal Credit Union (the "credit union").  JSF ¶¶ 1, 6.

---

[1] The Court draws its account of the underlying facts of this case from the parties' submissions on the competing motions.  These include: (1) the parties' joint statement of undisputed facts, Dkt. 15 ("JSF"), and supporting exhibits; (2) in support of Wesco's motion for summary judgment, its memorandum of law, Dkt. 19 ("Wesco Mem."), a declaration, Dkt. 20 ("Gershweir Decl."), and exhibits; (3) in support of CUMIS's motion for summary judgment, its memorandum of law, Dkt. 17 ("CUMIS Mem."); (4) Wesco's Rule 56.1 statement, Dkt. 21 ("Wesco SMF"), and CUMIS's response, Rule 56.1 statement, and supporting exhibits, Dkt. 23 ("CUMIS SMF Response"); (5) the parties' respective oppositions to the motions for summary judgment, Dkts. 24 ("Wesco Opp'n"), 22 ("CUMIS Opp'n"); (6) CUMIS's reply, Dkt. 25 ("CUMIS Reply"); and (7) Wesco's reply, Dkt. 26 ("Wesco Reply").

Wesco also filed a declaration and exhibits in support of its reply.  Dkt. 27.  These contain leases, deeds, and Google Maps photographs unrelated to the property at issue.  These concern properties in three cases Wesco cites.  Wesco argues that such evidence shows that those cases are factually analogous to this one.  Wesco Reply at 9–11.  CUMIS objected to the declaration and exhibits, Dkt. 28, and Wesco filed a reply, Dkt. 29.  The Court disregards these materials.  It is axiomatic that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *Webster v. Fall*, 266 U.S. 507, 511 (1925).  The information in Wesco's reply declaration and exhibits is irrelevant to this case—and was not cited in the three decisions on which Wesco relies.  Had the Court considered these materials, they would not have had any bearing on this decision.

### B.    The Wesco Policy Issued to UHAB

Wesco issued a commercial general liability coverage policy to UHAB (the "Wesco policy"). *Id.* ¶ 4. The Wesco policy was effective between December 31, 2020 and December 31, 2021. *Id.* Under the subsection titled "Coverage [for] Bodily Injury and Property Damage Liability," it provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

*Id.* ¶ 5 (cleaned up).

### C.    The CUMIS Policy Issued to the Credit Union

CUMIS issued a commercial general liability coverage policy to the credit union (the "CUMIS policy"). *Id.* ¶ 1. The CUMIS policy was effective between October 4, 2020 and October 4, 2021. *Id.* The policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . caused by an 'occurrence.'" *Id.* ¶ 2. It defines "occurrence" as "an accident[] . . . that results in bodily injury or property damage." *Id.* (cleaned up).

The CUMIS policy contains an endorsement that designates UHAB as an additional insured, based on the credit union's lease of the property from UHAB. *Id.* ¶ 3. It limits UHAB's coverage to "bodily injury, property damage, personal injury, or advertising injury *arising out of the ownership, maintenance, or use of that part of the premises designated on this endorsement*," subject to certain additional exclusions not relevant here.[2] *Id.* (emphasis added) (cleaned up).

---

[2] The endorsement also states that coverage for UHAB, as an additional insured, (1) "only applies to the extent permitted by law"; and (2) "if coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be

### D.    The Leased Property

The property at issue is a four-story, mixed-use building in East Harlem.  *Id.* ¶¶ 1, 6. During the relevant time period, UHAB leased the ground floor (except for an entrance leading upstairs) and the backyard to the credit union (the "leased premises").  *Id.* ¶¶ 6, 14, 16.  It leased the upper floors to residential tenants.  *Id.* ¶ 6.  The leased premises have two entrances on the Second Avenue side of the property, which provide access from the sidewalk on that street.  *Id.* ¶ 11.

One set of cellar double doors lies on the sidewalk between these entrances (the "cellar doors").  *Id.* ¶¶ 12, 24.  The cellar doors lead to a basement, which is part of the property.  *Id.* ¶ 7.  The basement is accessible both through the cellar doors and from the interior of the leased premises on the ground floor.  *Id.*  Although the credit union has physical access to the basement through the leased area, it does not use the basement.  *Id.* ¶¶ 9–10.  The basement is used only by (1) UHAB to maintain the boiler and utility meters, and (2) the residential tenants for storage. *Id.* ¶ 8.

The lease between UHAB and the credit union is dated January 15, 2020 (the "lease"). *Id.* ¶ 13.  It defines the "Demised Premises"—*i.e.*, the leased area—as "a portion of the ground floor and back yard of the [property,] and shall not include the basement."  *Id.* ¶ 14.  The lease requires the credit union to maintain "commercial general liability insurance, including a contractual liability endorsement, and personal injury liability coverage, in respect of the Premises and the conduct or operation of business therein, with [UHAB] . . . as additional insured."  *Id.* ¶ 17.  The lease does not separately define "Premises."  *Id.* ¶¶ 14, 18.

---

broader than that which [the credit union is] required by the contract or agreement to provide for such additional insured."  JSF ¶ 3 (cleaned up).

The lease, under a section titled "Repairs by Landlord," states:

> Upon reasonable notice from Tenant, Landlord shall make or cause to be made all repairs to the Building and the Demised Premises (including, but not limited to, repairs to and paving of the sidewalks, parking areas, repairs to the roof and structural repairs to the foundation, exterior walls and any load bearing interior walls, and repairs to the windows).

*Id.* ¶ 19.

Under a section titled "Repairs and Maintenance by Tenant," the lease states:

> (a)   Tenant shall be solely responsible to make all repairs to its equipment (including any security equipment owned by the Tenant), air-conditioning equipment, and exterior gates, if any, located in the Demised Premises.  Tenant shall maintain all of the equipment (including the air-conditioning unit and connections), furniture and fixtures provided by Landlord in the Demised Premises and keep same in proper working order.

> (b)   Landlord shall remove snow and ice in front of the Demised Premises in compliance with applicable City rules and limited to removal during normal business hours.

*Id.*

### E.    The Underlying Personal-Injury Action

On November 10, 2021, Timothy Miller initiated a lawsuit in New York Supreme Court in Brooklyn (the "underlying action").[3]  JSF ¶ 20; Dkt. 15-4 ("Miller Compl.").  The complaint named UHAB and the credit union as defendants.  Miller Compl. at 1.  On February 22, 2021, it alleged, Miller tripped and fell due to a defective "sidewalk and/or sidewalk cellar doors adjacent to and in front of" the property.  JSF ¶ 21.  It alleged that, the same day, UHAB and the credit union inspected and repaired "the sidewalk and the sidewalk cellar doors" in front of the property.  Miller Compl. ¶¶ 34–36, 68–70.  It alleged that the defendants were liable for damages for Miller's injuries as a result of their "carelessness, recklessness, and negligence . . . in the

---

[3] The underlying action is *Miller v. UHAB Housing Development Fund Corp.*, No. 528913/2021 (N.Y. Sup. Ct.).

ownership, operation, management, maintenance, repair, inspection, and control of the . . . sidewalk, sidewalk cellar doors, land, building, and premises." *Id.* ¶ 110 (cleaned up).

On February 23, 2022, Miller responded to UHAB and the credit union's demand for particulars. Dkt. 15-5 ("Miller Response"). His response stated that the accident occurred "at the sidewalk" in front of the property. *Id.* ¶ 6. It stated that "the embedded cellar doors of the sidewalk/walkway" were "uneven" and "loose." *Id.* ¶ 7. It stated that UHAB and the credit union had been negligent for failing to maintain the "sidewalk cellar doors and/or public walkway." *Id.* ¶ 9.

At Miller's deposition, he testified that he fell while walking on the cellar doors. JSF ¶ 23. He stated that one cellar door deflected (*i.e.*, tipped, bowed, or bent), and he tripped over the edge of the other door. *Id.* He identified the cellar doors at issue as those pictured in front of the leased area in the photograph below:



*Id.* ¶ 24.[4]

On June 24, 2024, the credit union moved for summary judgment, under CPLR § 3212, on all claims against it. *Id.* ¶ 25; Dkt. 15-6 (credit union affirmation). UHAB also moved for summary judgment on all claims against it. JSF ¶ 26.

On October 4, 2024, Miller opposed UHAB's motion. *Id.* ¶ 27; Dkt. 15-7 ("Miller Aff."). He cited New York City Administrative Code § 19-152 as the statutory basis for UHAB's liability. Miller Aff. ¶¶ 37–42. That section is titled "Duties and obligations of property owners with respect to sidewalks and lots." NYC Admin. Code § 19-152. It requires owners of real property to maintain and, if necessary, repair portions of sidewalks in front of or abutting their property. *Id.* § 19-152(a). It provides that the commissioner of transportation "shall direct" an owner to repair any portions of sidewalks that "contain a substantial defect." *Id.* It states, as Miller noted: "[A] substantial defect shall include . . . hardware defects[,] which shall mean (i) hardware or other appurtenances not flush within 1/2 [inch] of the sidewalk surface or (ii) cellar doors that deflect greater than one inch when walked on, are not skid resistant[,] or are otherwise in a dangerous or unsafe condition." *Id.* § 19-152(a) & (a)(6); Miller Aff. ¶ 39.

On May 14, 2025, the court granted the credit union's motion for summary judgment and denied UHAB's summary judgment motion.[5] JSF ¶ 28.

The underlying action remains pending—it has not settled or been tried. *Id.* ¶ 29.

To date, Wesco has paid for the defense of its insured, UHAB, in the underlying action. *Id.* ¶ 30.

---

[4] The parties do not specify when this deposition occurred or provide additional details of Miller's deposition testimony.

[5] The New York court's decision did not provide further explanation. *See* JSF ¶ 28.

F.    **This Litigation**

On October 15, 2024, Wesco filed suit against CUMIS in New York Supreme Court in Manhattan.  *Id.* ¶ 31.  It sought a declaration that CUMIS must defend and indemnify UHAB in the underlying action.  *Id.*  It asserted that UHAB is an additional insured under the credit union's policy with CUMIS and that this coverage is primary to UHAB's under the Wesco policy.  *Id.*

On March 17, 2025, CUMIS removed the action to this Court on the basis of diversity jurisdiction.  JSF ¶ 33; Dkt. 1.  On June 5, 2025, the Court set a schedule for summary judgment briefing.  Dkt. 13.  Consistent with that schedule, on June 26, 2025, the parties filed the joint statement of undisputed facts.  Dkt. 15.  They also filed a letter, noting that, although they disagree whether UHAB is entitled to defense and indemnification under the CUMIS policy, they agree that, if so, "the CUMIS policy would be primary to the Wesco policy."  Dkt. 14 ("Priority Ltr.") at 1.

On July 10, 2025, the parties each moved for summary judgment.  Dkts. 17 ("CUMIS Mem."), 19 ("Wesco Mem.").  In support, Wesco filed a declaration, exhibits, and an individual Rule 56.1 statement.  Dkts. 20–21.  On July 24, 2025, the parties opposed each other's motion. Dkts. 22 ("CUMIS Opp'n"), 24 ("Wesco Opp'n").  The same day, CUMIS responded to the Wesco SMF, and attached exhibits and its own Rule 56.1 statement.  Dkts. 22–23.  On July 31, 2025, the parties replied.  Dkts. 25 ("CUMIS Reply"), 26 ("Wesco Reply").  In support, Wesco attached another declaration and exhibits.  Dkt. 27 ("Gershweir Reply Decl.").  On August 4, 2025, CUMIS objected to the reply declaration.  Dkt. 28.  On August 5, 2025, Wesco responded to CUMIS's objections.  Dkt. 29.

## II.    Governing Legal Standards

### A.    Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that no genuine issue respecting any material fact exists.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  In making this determination, the Court must view all facts "in the light most favorable" to the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**B.      Interpretation of Insurance Policies Under New York Law**

New York law governs interpretation of the policies at issue.  *See* Wesco Mem. at 16;

CUMIS Mem. at 10–15.  "The construction of an insurance contract is ordinarily a matter of law

to be determined by the court."  *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256

F. Supp. 2d 176, 180 (S.D.N.Y. 2003) (citing *Town of Harrison v. Nat'l Union Fire Ins. Co.*, 89

N.Y.2d 308, 316 (1996)).  In resolving a summary judgment motion involving contract

interpretation, "a court should accord [contract] language its plain meaning giving due

consideration to the surrounding circumstances and apparent purpose which the parties sought to

accomplish."  *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson

v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).  A court may not, through its interpretation, "add

or excise terms or distort the meaning of any particular words or phrases, thereby creating a new

contract under the guise of interpreting the parties' own agreements."  *Nomura Home Equity

Loan, Inc. v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017).  A contract "must be

construed in a manner which gives effect to each and every part, so as not to render any

provision 'meaningless or without force or effect.'"  *Id.* (quoting *Ronnen v. Ajax Elec. Motor

Corp.*, 88 N.Y.2d 582, 589 (1996)).

Where contract language is unambiguous, "the district court [may] construe it as a matter

of law and grant summary judgment accordingly."  *Palmieri*, 445 F.3d at 187 (quoting

*Thompson*, 896 F.2d at 721).  But, if policy language is ambiguous, New York law provides that

such ambiguities must be construed in favor of the insured and against the insurer.  *See Duane

Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010); *Handelsman v.

Sea Ins. Co.*, 85 N.Y.2d 96, 101 (1994) (same).

Whether a contract is ambiguous is a threshold question of law for the court. *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). "Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). The Second Circuit has explained that "ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

## III.    Discussion

### A.    CUMIS Has a Duty to Defend UHAB as an Additional Insured[6]

Under New York law, an insurer owes its insured a duty to defend under either of two scenarios.

---

[6] At the threshold, CUMIS argues that Wesco's tender of UHAB's claim to CUMIS was untimely. CUMIS Opp'n at 15–16. Wesco concedes that tender was untimely, but argues that no prejudice resulted from the delay. Wesco Reply at 11–14. Under the New York Insurance Law, an insured's failure to timely tender a claim to the insurer does not invalidate the claim unless the late notice prejudiced the insurer. *See* N.Y. Ins. L. § 3420(a)(5). CUMIS does not argue or offer evidence that Wesco's untimely tender prejudiced CUMIS. To the contrary, Wesco's present disclaimer of coverage indicates that "earlier notice would have resulted only in an earlier denial." *Peerless Ins. Co. v. Tech. Ins. Co., Inc.*, 829 F. App'x 549, 552 (2d Cir. 2020) (summary order). In such circumstances, no prejudice has occurred. *See id.*; *Tech. Ins. Co., Inc. v. Phila. Indem. Ins. Co.*, 642 F. Supp. 3d 445, 477 (S.D.N.Y. 2022) ("*Technology*"). And Wesco's defense of UHAB to date in the underlying lawsuit further supports that CUMIS has not been prejudiced by the late tender. *See, e.g.*, *New York v. Blank*, 27 F.3d 783, 794 (2d Cir. 1994) ("co-insurers' interests in investigating the occurrence and controlling litigation and settlement negotiations closely converge" (cleaned up)). UHAB's claim is thus valid, notwithstanding Wesco's late tender. *See, e.g.*, *Peerless*, 829 F. App'x at 552; *Salvo v. Greater N.Y. Mut. Ins. Co.*, 185 N.Y.S.3d 28, 28 (1st Dep't 2023); *Technology*, 642 F. Supp. 3d at 477.

First, under the "four corners" rule, a duty to defend "arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Worth Const. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 415 (2008) (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)). "This standard applies equally to additional insureds and named insureds." *Id.* The allegations must be "liberally construed," and "any doubt" as to whether they state a claim within the coverage of the policy "must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (1st Dep't 1981)). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.* (quoting *Auto. Ins. Co. v. Cook*, 7 N.Y.3d 131, 137 (2006)); *see also id.* at 140 (duty to defend "exceedingly broad").

Second, "even when the complaint itself does not contain facts or law suggesting a possibility of coverage," an insurer must defend "when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 324 (S.D.N.Y. 2020) (quoting *Fitzpatrick v. Am. Honda Co.*, 78 N.Y.2d 61, 67 (1991)). That is because the duty to defend derives "not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured." *Id.* (citation omitted). Courts must therefore also "examine the information possessed by the insurer" to determine whether the duty to defend applies. *Id.* (citation omitted).

Here, the complaint in the underlying action alleges that Miller tripped and fell due to a defective "sidewalk and/or sidewalk cellar doors adjacent to and in front of" the property. JSF ¶ 21. It alleges that UHAB and the credit union then inspected and repaired "the sidewalk and

12

the sidewalk cellar doors" in front of the property.  Miller Compl. ¶¶ 34–46, 68–70.  And it alleges that UHAB and the credit union are liable for damages for Miller's injuries, based on negligence "in the ownership, operation, management, maintenance, repair, inspection, and control" of the "sidewalk" and "sidewalk cellar doors."  *Id.* ¶ 110 (cleaned up).

Under the additional insured endorsement, CUMIS agreed to cover claims against UHAB for "bodily injury, property damage, personal injury, or advertising injury arising out of the ownership, maintenance, or use of that part of the premises designated on this endorsement." JSF ¶ 3 (cleaned up).  The parties agree that Miller's claim involves "bodily injury" or "personal injury."  But they disagree on whether such injury arose out of the "ownership, maintenance, or use" of the leased premises.  The Court finds that it did.

Numerous courts applying New York law have interpreted virtually identical policy language.  *See, e.g.*, *ZKZ Assocs. LP v. CNA Ins. Co.*, 89 N.Y.2d 990, 909 (1997) ("*ZKZ*"); *Isidore Margel Tr. Mitzi Zank Tr. v. Mt. Hawley Ins. Co.*, 145 N.Y.S.3d 817, 818 (2d Dep't 2021) ("*Isidore Margel*"); *Tech. Ins. Co., Inc. v. Phila. Indem. Ins. Co.*, 642 F. Supp. 3d 445, 462 (S.D.N.Y. 2022) ("*Technology*"); *Travelers Indem. Co. v. Underwriters at Lloyd's, London*, No. 24 Civ. 734, 2025 WL 1735475, at *1 (S.D.N.Y. June 23, 2025) ("*Travelers*").  These courts have held that the policies' disjunctive language—"ownership, maintenance, *or* use"—requires courts to give each of those words independent meaning.  *See Nomura Home Equity Loan*, 30 N.Y.3d at 581.  Each term thus provides an independent basis for additional insured coverage. *See, e.g.*, *Technology*, 642 F. Supp. 3d at 462.  Such coverage may be triggered by ownership, maintenance, or use by either the tenant or the landlord—*i.e.*, the credit union or UHAB.  *Id.* And, because "arising out of" means "having connection with" or "incident to," *Worth Const.*

*Co.*, 10 N.Y.3d at 415, coverage may extend to accidents that occurred outside the leased premises, *Technology*, 642 F. Supp. 3d at 464 (collecting cases).

The Court holds that CUMIS's duty to defend here was triggered in two ways.

First, the underlying action arises from UHAB's "ownership" of the leased premises. Under well-settled New York law concerning identical policy language, a landlord qualifies as an additional insured when a claim arises from an accident on a sidewalk appurtenant to the leased premises. *See Technology*, 642 F. Supp. 3d at 460 (collecting cases). New York City Administrative Code § 7-210 "imposes a non-delegable duty" on the owner of a property abutting the sidewalk to maintain and repair it. *Collado v. Cruz*, 917 N.Y.S.2d 178, 179 (1st Dep't 2011); *see* N.Y.C. Admin. Code § 7-210(a)–(b) (imposing "duty on the owner of real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition," and making owner "liable for any . . . personal injury . . . proximately caused by the failure of such owner to maintain such sidewalk in a reasonable safe condition"). That is so even where the owner does not own the sidewalk—as is almost always the case in New York City. *See Technology*, 642 F. Supp. 3d at 460. When the landlord's failure to maintain the sidewalk appurtenant to its property causes an accident there, liability triggers additional insured coverage under the policy because it arises out of the landlord's ownership of the property. *See, e.g.*, *id.* at 462.

Here, the underlying complaint alleges injuries from a defective "sidewalk and/or cellar doors" appurtenant to the property. JSF ¶ 21; *see also* Miller Compl. ¶¶ 34–46, 68–70 (alleging UHAB and credit union later repaired "the sidewalk and the sidewalk cellar doors"), 110 (alleging negligence in the "maintenance" of the "sidewalk" and "sidewalk cellar doors"). Section 7-210 obligated UHAB, based on its ownership of the property, to maintain and repair

the abutting sidewalk.  Under the CUMIS policy, UHAB's liability to Miller arises from its

ownership of the property and thus triggers additional insured coverage.  *See, e.g.*, *Technology*,

642 F. Supp. 3d at 462 (holding, under "ownership" prong of identical policy provision, that

tenant's insurer had duty to defend additional insured landlord in personal-injury action for trip-

and-fall on sidewalk in front of leased property); *Isidore Margel*, 145 N.Y.S.3d at 818 (2d

Dep't 2021) (same); *Frank v. Cont'l Cas. Co.*, 999 N.Y.S.2d 836, 838–39 (2d Dep't 2014)

(same); *L & B Ests., LLC v. Allstate Ins.*, 897 N.Y.S.2d 188, 190 (2d Dep't 2010) (same); *Tower*

*Ins. Co. v. Leading Ins. Grp. Ins. Co.*, 21 N.Y.S.3d 240, 240 (1st Dep't 2015) ("*Tower*") (same).

Second, the action arises from the "use" of the leased premises.  Under that provision,

courts applying New York law have routinely held additional insured coverage triggered for

accidents that occur on sidewalks or other areas "necessarily used for access in and out of" the

covered property.  *ZKZ*, 89 N.Y.2d at 991 (additional insured covered where pedestrian tripped

and fell on sidewalk used to access leased premises); *see, e.g.*, *Peerless Ins. Co. v. Tech. Ins. Co.*,

829 Fed. App'x 549, 551 (2d Cir. 2020) (summary order) ("*Peerless*") (same); *Travelers*, 2025

WL 1735475, at *3–4 (same).

Here, the complaint alleges that the trip and fall occurred on the "sidewalk and/or

sidewalk cellar doors adjacent to and in front of" the leased premises.  JSF ¶ 21.  And it is

undisputed that Miller has claimed that the cellar doors on the sidewalk, pictured below, were a

cause of his accident:



*Id.* ¶ 24. The accident occurred on a portion of the sidewalk between—and only several feet from—the two doors, pictured above, that "provid[e] access" to the leased premises. *Id.* ¶ 11. It is immaterial that when Miller tripped and fell, he was not attempting to access the credit union or the property, and did not otherwise have any relationship to the credit union, the property, or UHAB. *See, e.g.*, *Technology*, 642 F. Supp. 3d at 464–65 (fact that claimant "was only a passerby, and not a client, patron, invitee, or visitor" of tenant or landlord was "irrelevant" to liability and coverage); *Travelers*, 2025 WL 1735475, at *4 (same); *Donato Realty, LLC v. Utica First Ins. Co.*, 2016 WL 3902273, at *2 (N.Y. Sup. Ct. July 15, 2016), *aff'd*, 45 N.Y.S. 3d 54 (1st Dep't 2017) (same); *Leading Ins. Grp. Ins. Co. v. Greenwich Ins. Co.*, 984 N.Y.S.2d 854, 861 (N.Y. Sup. Ct. Apr. 17, 2014) (same). Because the "part of the sidewalk where the alleged accident occurred was necessarily used for access in and out of" the leased premises, the underlying claim arose out of the "use" of those premises. *ZKZ*, 89 N.Y.2d at 991; *see, e.g.*,

16

*Peerless*, 829 Fed. App'x at 551 (duties to defend and indemnify triggered under identical policy language, where claimant fell on part of sidewalk necessary to access leased premises); *Certain Underwriters at Lloyd's London Subscribing to Policy of Ins. No. ML071004 v. Castlepoint Ins. Co.*, 2017 WL 880748, at *1 (N.Y. Sup. Ct. Jan. 6, 2017) (same); *Travelers*, 2025 WL 1735475, at *3–4 (same, with respect to duty to defend).

CUMIS's counterarguments are unpersuasive.

First, CUMIS argues that it does not have a duty to defend UHAB because "landlords are not additional insureds under tenants' policies for sidewalk cellar door injuries when tenants do not lease the basement."  CUMIS Mem. at 11 (emphasis omitted).  Because the lease excluded the basement to which the cellar doors led, CUMIS argues, a trip-and-fall on those doors does not trigger the duty to defend UHAB.  But the underlying complaint, which must be credited at this stage, contains allegations that Miller tripped on both the cellar doors and also other portions of the sidewalk in front of the leased premises.  *See, e.g.*, Miller Compl. ¶¶ 29 (alleging UHAB owned "the sidewalk and the sidewalk cellar doors" in front of the property), 67 (alleging credit union "controlled the sidewalk and the sidewalk cellar doors"), 109 (alleging Miller fell "on the sidewalk and/or sidewalk cellar doors").  As noted, under case law interpreting identical policy language, UHAB's ownership of the property triggers additional insured coverage for accidents occurring on appurtenant sidewalks.  And, even assuming *arguendo* that an injury occurring exclusively on the cellar doors would not trigger coverage, the four corners of Miller's complaint also allege injury "on the sidewalk"; they thus meet the liberal standard triggering the duty to defend.  These allegations, at a minimum, "potentially give rise to a covered claim."  *Worth Const. Co.*, 10 N.Y.3d at 415; *see also Euchner-USA, Inc.*, 754 F.3d at 141 (allegations must be

"liberally construed," and any doubt as to whether they state a covered claim must be resolved against the insurer and in favor of the additional insured).

Second, CUMIS attempts to distinguish the cases that have found coverage for additional insureds based on identical policy language. Opp'n at 8–11. For example, in *Technology*, the court held that the tenant's insurer had a duty to defend the landlord as additional insured, based on virtually identical policy language, for claims arising from a trip-and-fall on cellar doors outside the leased property. CUMIS argues that *Technology* is inapposite because: (1) the lease in that case allowed the tenant to use the entire property, including the basement; (2) that tenant controlled access to the basement via the cellar doors; and (3) that lease required the tenant to maintain the sidewalk. By contrast, CUMIS argues, the lease at issue here covered a portion of the ground floor, excluded the basement, and obligated UHAB to maintain the sidewalk. But those distinctions do not compel a different result here. As noted, the complaint in the underlying action alleges that Miller tripped and fell both on the cellar doors, and also on other portions of the sidewalk abutting the leased premises. The fact that the credit union did not have or control access to the basement via the cellar doors thus does not resolve the duty to defend. And, as to whether the landlord or tenant was obligated to maintain appurtenant sidewalks, *Technology* noted that § 7-210 "imposes a *nondelegable* duty on the owner of the abutting premises to maintain and repair the sidewalk." 642 F. Supp. 3d at 460 (emphasis added) (quoting *Collado*, 917 N.Y.S.2d at 179). It thus held, in accord with "numerous decisions in the New York courts," that "[w]hen the premises have been leased and an accident occurs by virtue of the failure of the sidewalk to be maintained, the landlord's liability arises as a result of its ownership of the leased premises and additional insured coverage is triggered." *Id.*; s*ee also Tower*, 21 N.Y.S.3d at 240 ("Even if the lease did not address the sidewalk explicitly, the

18

additional insured endorsement would give the landlords coverage for accidents occurring

outside the demised premises, including on abutting public sidewalks.").  How the lease in

*Technology* ostensibly allocated responsibility to maintain appurtenant sidewalks did not inform

that court's holding that additional insured coverage arose from the landlord's *ownership* of the

premises.  The same is so here.[7]

Third, CUMIS relies on cases holding landlords not covered as additional insureds under

tenants' policies.  Opp'n at 13–15; Reply at 6.  These cases are readily distinguished.  For

example, *Wesco Insurance Co. v. Jewelers Mutual Insurance Co.*, 227 N.Y.S.3d 279, 279 (1st

Dep't 2025), held that the landlord did not qualify as an additional insured because the claimant

had tripped and fallen on cellar doors located around the corner from the "sole entrance and

storefront" of the leased premises.  Here, by contrast, Miller's complaint alleges that the accident

occurred (1) directly in front of the leased premises and (2) on parts of the sidewalk besides

those where the cellar doors were located.  In *Medina v. 676 Hunts Point Realty Corp.*, 158

N.Y.S.3d 97, 97 (1st Dep't 2021), the court did not find a duty to *indemnify* where the alleged

accident occurred on an area of sidewalk that was not necessary to enter the leased premises.

But an insurer's "duty to defend is broader than its duty to indemnify," and the allegations in

Miller's complaint, paired with the jointly stipulated photograph of the sidewalk area in front of

the property, "suggest a reasonable possibility of coverage."  *Auto. Ins. Co. of Hartford v. Cook*,

7 N.Y.3d 131, 137 (2006) (citation omitted).  *Rensselaer Polytechnic Institute v. Zurich*

*American Insurance Co.*, 575 N.Y.S.2d 598, 598 (1st Dep't 1991), found no coverage for an

---

[7] Although the lease in this case required UHAB to make any necessary repairs to the sidewalk, such obligation was triggered only "[u]pon reasonable notice" from the credit union to UHAB. JSF ¶ 19.  Thus, even if the lease's allocation of responsibility for sidewalk maintenance had been determinative, the credit union shared such responsibility.

accident that had occurred outside New York City (and more than a decade before § 7-210's

enactment). Because that landlord's liability could not have been triggered by § 7-210, the court

did not have occasion to address whether "ownership" gave rise to additional insured coverage.

And the court did not address whether the tenant's "use" had triggered such, because *Rensselaer*

*Polytechnic Institute* was decided before *ZKZ*. In *Christ the King Regional High School v.*

*Zurich Insurance Co.*, 937 N.Y.S.2d 290, 290 (2d Dep't 2012) ("*Christ the King*"), a pedestrian

fell on a sidewalk between "the parking lot behind [a] school" and "the school's front entrance,"

during a two-day rental of an auditorium and some classrooms inside the school. But that injury

was "further removed from the leased premises" than the accident here. *Travelers*, 2025 WL

1735475, at *4 (distinguishing *Christ the King* on same ground). And, in *Leading Insurance*

*Group Insurance Co. v. Argonaut Great Central Insurance Co.*, 47 Misc. 3d 1214(A), at *4–5

(N.Y. Sup. Ct. Apr. 22, 2015), the court did not address whether the trip and fall on the sidewalk

outside leased premises had triggered the "ownership" prong of the policy language, *see also*

*Travelers*, 2025 WL 1735475, at *4 & n.1 (declining to follow *Argonaut* and noting that that

decision "acknowledged that its holding was in tension with other decisions applying [the New

York Court of Appeals' decision in] *ZKZ*").

The Court thus holds that the additional insured endorsement to the CUMIS policy

obligates CUMIS to defend UHAB in the underlying action.[8] *See, e.g.*, *Technology*, 642 F.

Supp. 3d at 462 (so holding based on "ownership" prong of identical policy); *Isidore Margel*,

145 N.Y.S.3d at 818 (same); *Frank*, 999 N.Y.S.2d at 838–39 (same); *L & B Ests.*, 897 N.Y.S.2d

at 190 (same); *ZKZ*, 89 N.Y.2d at 991 (so holding based on "use" prong of identical policy);

---

[8] The parties agree that the CUMIS policy is primary to the Wesco policy. Priority Ltr. at 1.

*Peerless*, 829 Fed. App'x at 551 (same); *Travelers*, 2025 WL 1735475, at *3–4 (same); *Castlepoint*, 2017 WL 880748, at *1 (same).

### B.    Whether CUMIS Has a Duty to Indemnify UHAB Cannot Be Determined Until UHAB's Liability Is Resolved in the Underlying Action

The duty to indemnify is "distinctly different" from the duty to defend. *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985). Unlike the duty to defend—which is based on the allegations in the pleadings—the duty to indemnify turns on the "actual basis for the insured's liability." *Euchner-USA, Inc.*, 754 F.3d at 140 (citation omitted). And "the duty to indemnify arises only when a third party's claim *actually* lies within a policy's coverage," whereas "the duty to defend arises so long as the action could *potentially* give rise to a covered claim." *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249 (S.D.N.Y. 2019) (emphases in original), *aff'd*, 816 F. App'x 611 (2d Cir. 2020) (summary order).

Here, whether CUMIS has a duty to indemnify UHAB cannot yet be determined. The underlying action has not yet gone to trial and remains pending. JSF ¶ 29. That trial, if it occurs, "will shed light on, if not resolve," whether a duty to indemnify exists. *Travelers*, 2025 WL 1735475, at *5. At trial, the remaining parties in the underlying action can reasonably be expected to develop the currently sparse factual record—including concerning how, and on what parts of the cellar doors and/or sidewalk, Miller tripped and injured himself. Trial may also surface other facts that have the capacity to bear on whether the duty to indemnify applies. For example, the credit union argues that UHAB "hired a contractor to repair [the] cellar doors only a few months before Mr. Miller's accident," CUMIS Mem. at 14; the additional insured endorsement excludes from coverage any "structural alterations" or "new construction" by UHAB, JSF ¶ 3. In other words, the facts to be developed at trial could conceivably trigger

21

exclusions to the policy, even if the accident ultimately arose from the "ownership, maintenance, or use" of the leased premises. *Id.*

The Court accordingly denies, as premature, the parties' cross-motions for summary judgment on whether CUMIS has a duty to indemnify UHAB. *See, e.g.*, *Travelers*, 2025 WL 1735475, at *5 (denying cross-motions for summary judgment on duty to indemnify, where pending trial in underlying action was necessary to inform such); *Penguin Air Conditioning Corp. v. Travelers Indem. Co.*, No. 20 Civ. 3377, 2021 WL 4392299, at *8 (S.D.N.Y. Sept. 24, 2021) (similar); *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 2 Civ. 2406, 2002 WL 1391920, at *6–7 (S.D.N.Y. June 25, 2002) (similar); *Pavarini Constr. Co. v. Liberty Mut. Ins. Co.*, 704 N.Y.S.2d 72, 72 (1st Dep't 2000) (similar); *see also Starr Indem. & Liability Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 350 (S.D.N.Y. 2021) (collecting cases showing "uncontroversial proposition that courts will defer a decision on indemnification until there has been a determination on liability in the underlying litigation").

## CONCLUSION

For the above reasons, as to the duty to defend, the Court grants Wesco's motion for summary judgment and denies CUMIS's cross-motion. As to the duty to indemnify, the Court denies both parties' summary judgment motions as premature, without prejudice to renewal after resolution of the underlying action.

The parties shall promptly confer and, within two weeks of the date of this decision, file a joint letter regarding next steps. The letter should address, *inter alia*, (1) whether the parties have agreed as to the amount of reasonable fees and costs Wesco has incurred in defending the underlying action, and if not, the process the parties propose to litigate or mediate that dispute;

22

and (2) whether this case should otherwise be stayed, pending resolution of the underlying action.

The Court respectfully directs the Clerk of Court to terminate all pending motions.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: February 19, 2026
       New York, New York